# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

THOMAS H. SMOOT, III, as
Executor of the estate of
Thomas H. Smoot, II,

    Plaintiff,

    v.

DIANNE SMOOT,

    Defendant.

CV 213-040

## ORDER

Decedent Thomas H. Smoot, II ("Smoot II") passed away on February 16, 2009. Having been an insurance broker, it is unsurprising that the beneficiaries of his estate were entitled to collect on several life insurance policies, among other financial assets. Two of these beneficiaries included Smoot II's son, Thomas H. Smoot, III ("Smoot III"), and Dianne Smoot, Smoot II's ex-wife. Dianne Smoot was divorced from Decedent before he died. Smoot III, as Executor of Decedent's estate, negotiated and paid the IRS a considerable sum for taxes and fees associated with the estate, including taxes on the proceeds Dianne Smoot received on the life insurance policies and other assets. However, Dianne Smoot has not yet paid her pro rata

1

share of the taxes and fees. In this action, Smoot III seeks to recover against Ms. Smoot the taxes he paid that are attributable to her insurance proceeds under I.R.C. § 2206 (Count I), contribution from Ms. Smoot for the portion of the taxes attributable to all other assets she received (Count II), and attorney's fees and costs (Count III). Plaintiff has filed a motion for summary judgment (Dkt. no. 31).

For the reasons stated below, Plaintiff's motion for summary judgment is **GRANTED** as to Count I and **DENIED** as to Counts II and III.

## FACTUAL BACKGROUND

After Smoot II passed away, Smoot III was named the Executor of the estate. Plaintiff was a beneficiary of the estate, along with Decedent's ex-wife, Dianne Smoot ("Defendant"). Defendant was named as the beneficiary of certain financial assets held by Decedent, including life insurance policies, deferred compensation/commission plan accounts, an IRA account, a 401(k) account, and an annuity. Plaintiff and Defendant agree that Defendant received approximately $5.4 million from these assets, however they do not agree on the exact amount. Plaintiff maintains that Defendant received $5,434,027, while Defendant only admits that she received $5,403,250. Dkt. no. 34-1, ¶ 1; Dkt. no. 34-2, ¶¶ 1-3.

AO 72A
(Rev. 8/82)

As Executor, Plaintiff was responsible for paying the federal estate taxes due on Decedent's estate. While Plaintiff initially filed a tax return taking the position that the estate was insolvent and thus owed no taxes, the IRS disputed this position. In late 2012, Plaintiff reached a settlement with the IRS and agreed to pay $1,268,355 in federal estate taxes plus $145,425 in accrued interest, for a total of $1,413,780. See Dkt. no. 1, p. 14.

Item X of Decedent's will provides that beneficiaries will pay a pro-rata share of the taxes assessed on the estate for the assets they received:

> All transfer, estate, inheritance, succession and other death taxes which shall become payable by reason of my death, other than any tax on any generation-skipping transfer and any additional estate tax imposed pursuant to Section 2032A(c) of the Internal Revenue Code of 1986, as amended, shall be charged against and be paid by the recipient of such property or from the property to be received.

Dkt. no. 1, p. 36 (Will, Item X). Plaintiff argues that for purposes of this calculation, three individuals received payments triggered by Decedent's death: Defendant received $5,434,027, Plaintiff received $2,248,051, and Decedent's former business partner Greg Howard received $100,625. See Dkt. no. 34-3. Together, the three received $7,782,703. Id. Defendant's share using these numbers is approximately 69.8%.[1] Plaintiff alleges that Defendant is thus liable for approximately $987,127

---

[1] $5,434,027 / $7,782,703 = 0.69821847.

of the amount paid to the IRS, which is 69.821847% of $1,413,780 rounded down to the dollar.

Plaintiff demanded reimbursement from Defendant for the portion of estate taxes attributable to the proceeds Defendant received on January 9, 2008. Dkt. no. 1, p. 13. Defendant has not yet paid Plaintiff this amount.

## PROCEDURAL BACKGROUND

Defendant's initial reason for refusing to pay Plaintiff his requested amount of contribution was that the Parties had been involved in a prior lawsuit regarding the subject insurance policies. In the previous case, the Parties disputed whether Defendant must contribute to payment of the estate's tax liability. At the time, though, Plaintiff, as Executor of the estate, had taken the position that no estate taxes were due. See generally N.Y. Life Ins. Co. v. Smoot, No. CV 209-047, 2009 WL 4328297 (S.D. Ga. Nov. 30, 2009). This Court dismissed the claim as premature, and the parties eventually entered into a settlement agreement resolving "all remaining claims" in the litigation. Afterwards, the IRS disputed the Executor's tax position and assessed an amount of taxes due, and Plaintiff sought contribution from Defendant. When Defendant refused, Plaintiff brought the present action.

Initially, Defendant argued that Plaintiff was precluded from re-litigating his contribution claims because the prior

claim was dismissed and the parties had reached a settlement agreement for "all remaining claims." This Court, in its December 4, 2013 Order denying Plaintiff's Motion for Partial Summary Judgment on the Pleadings and Defendant's Motion for Summary Judgment, held that Plaintiff was not barred from bringing the present action. Dkt. no. 27, pp. 1-2.

Plaintiff brings the present motion for summary judgment (Dkt. no. 31), arguing that he has now produced adequate evidence which shows there is no material dispute as to his contribution claims.

### LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d

501, 507 (11th Cir. 2000). However, where the nonmovant's own sworn testimony contradicts the more favorable testimony of another witness, the court must accept the nonmovant's version of the events. Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

## DISCUSSION

Plaintiff brings three claims against Defendant: Count I for contribution for taxes paid on the life insurance policies pursuant to I.R.C. § 2206; Count II for contribution under state law for taxes paid on all other assets Defendant received from the estate; and Count III for attorney's fees. Plaintiff also argues jointly for prejudgment interest on Counts I and II.

## I. Count I: Contribution for Taxes Paid Pursuant to I.R.C. § 2206

Count I of Plaintiff's complaint seeks contribution from Defendant for the amount of tax he paid on behalf of the proceeds Defendant received from insurance policies on the life of Decedent. Under I.R.C. § 2206, "the executor shall be entitled to recover from [a] beneficiary such portion of the total tax paid as the proceeds of such policies [paid to the beneficiary] bear to the taxable estate" if (1) the tax has been paid, (2) any part of the gross estate on which the tax is assessed "consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor," and (3) the decedent does not direct otherwise in his will. 26 U.S.C. § 2206. The gross estate's value includes the value of all property received by beneficiaries "as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership." I.R.C. § 2042(2). Therefore, for Defendant to be liable for taxes on proceeds from life insurance policies (1) Defendant must have received proceeds as the insurance policies' beneficiary and (2) the Decedent must have had some incidents of ownership over the policies at the time of his death.

In its prior Order, this Court held that Plaintiff had not established that Defendant received proceeds properly included

in the gross estate's value. Dkt. no. 27, p. 22. The Defendant

had admitted to receiving proceeds from life insurance policies,

valued at close to $2,830,162. Dkt. Nos. 1 ¶ 10; 6 ¶ 10.

However, this Court held that Plaintiff had not made a

sufficient showing as to whether the Decedent had incidents of

ownership over these policies at the time of this death. Dkt.

no. 27, p. 27. This was because Plaintiff had only attached to

his complaint a schedule of the assets Defendant received,

documentation of the total amount of tax the estate owed, proof

that the Executor paid that amount, and the share of that amount

attributable to the proceeds Defendant received. Id. (citing

Dkt. no. 1, Exs. A and B).

Thus, at the summary judgment stage, two issues remain

regarding Count I: whether Decedent's will expressly sets forth

a tax liability scheme that is inconsistent with that provided

for in I.R.C. § 2206, and whether Decedent retained incidents of

ownership over the life insurance policies such that the

proceeds were properly included in his gross estate.

Plaintiff argues, and Defendant appears to concede, that

Decedent's will does not contemplate an alternative tax

liability scheme for its beneficiaries. The relevant provision,

Item X, reads:

> All transfer, estate, inheritance, succession and
> other death taxes which shall become payable by reason
> of my death, other than any tax on any generation-

skipping transfer and any additional estate tax imposed pursuant to Section 2032A(c) of the Internal Revenue Code of 1986, as amended, shall be charged against and paid by the recipient of such property or from the property to be received. . . . The amount of tax to be charged against the recipient shall be determined by multiplying a fraction, the numerator being the federal estate tax value of the property to be distributed to the recipient, and the numerator[2] [sic] being the total value of my taxable estate, all values being those that are as finally determined for federal estate taxes purposes; times the federal estate tax payable by my estate . . . .

Dkt. no. 1, Ex. D, p. 36-37. This formula is perfectly consistent with I.R.C § 2206's provision that the "executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds of such policies bear to the taxable estate. If there is more than one such beneficiary, the executor shall be entitled to recover from such beneficiaries in the same ratio." I.R.C. § 2206. Thus, I.R.C. § 2206 applies to Decedent's will because he has not "directed otherwise."

However, Defendant objects that Plaintiff has produced no evidence that Decedent retained incidents of ownership over the life insurance policies such that the proceeds were properly included in the gross estate. While Plaintiff has produced

---

[2] Naturally, a fraction cannot have two numerators. Plaintiff argues that this is simply a scrivener's error, and that the numerator (the top portion of a fraction indicating the number of parts of the whole) is intended to be "the federal estate tax value of the property to be distributed to the recipient," and the denominator (the bottom portion of a fraction indicating the sum of the whole) is intended to be "the total value of my taxable estate." Defendant does not challenge Plaintiff's scrivener's error argument, and the Court finds that Decedent intended Item X to operate as Plaintiff explains.

several documents in his attempt to establish the proper incidents of ownership, Defendant argues that the various documents are either unauthenticated, improperly authenticated, or do not actually show that Decedent retained incidents of ownership over the policies in question at the time of his death. Thus, before examining the documents to see if they establish that Decedent had incidents of ownership over the policies at the time of his death, the Court must first determine their authenticity and admissibility.

### a. **Authenticity and Admissibility of the Plan Documents**

Defendant argues that not a single one of Plaintiff's proffered documents showing incidents of ownership is admissible. There are two groups of these disputed documents. The first group is a collection of insurance policies, designation forms, account statements, and IRS Form 712s regarding the policies in question.[3] See Dkt. no. 34, Exs. 6-40. Plaintiff initially presents these documents as "true and accurate" copies of the records in an affidavit by Plaintiff's counsel, Mr. Allen Galis. Dkt. no. 34.

Defendant argues that none of the documents have been properly authenticated, and thus cannot be relied upon as evidence in considering Plaintiff's motion for summary judgment. Plaintiff counters that the documents speak for themselves and

---

[3] Form 712 reports the value of life insurance policies for estate tax purposes.

need no authentication. However, out of an abundance of caution, Plaintiff replied to Defendant's objections by submitting the second group of affidavits, which come from representatives of the various life insurance companies that issued the policies and purport to authenticate them. Defendant objects to these affidavits as untimely. Plaintiff also included the affidavit of Decedent's personal assistant, Michelle Allbright, in order to show that Decedent had incidents of ownership over his policies at the time of his death. Below is a summary of these affidavits, what they authenticate, and what other testimony they provide:

- Affidavit of Peter A. O'Malley, Director in the Mutual Fund Service and Control Department of New York Life Insurance Company, Dkt. no. 52. Authenticates an October 20, 2009 letter from a New York Life Insurance Customer Representative to Michelle Albright for policy 74 007412, and a copy of 2009 New York Life Trust Company IRA 25737-54676488 (Dkt. no. 32).

- Affidavit of Brian A. Taylor, Corporate Vice President in the Cleveland Service Center of New York Life Insurance Company, (Dkt. no. 54). Authenticates the Form 712 for policies Decedent had on the life of Defendant: New York Life Insurance Company Life Insurance Policies 47 912 509,

47 720 480, 46 545 622, 46 307 006, 45 774 213, and
45 492 867.

- Affidavit of Jill Terry, Senior Manager at The Cincinnati
  Life Insurance Company (Dkt. no. 56). Authenticates
  Cincinnati Life Insurance Company Policies L2519656,
  L2561015, P2772550, and P2785180.

- Affidavit of Christine Navin, Corporate Vice President in
  the Claims Department of New York Life Insurance Company
  (Dkt. no. 57). Authenticates New York Life Insurance
  Company Life Insurance Policies 62 887 711, 62 800 622,
  45 774 220, 45 492 891, 43 918 184, 38 068 808, and
  48 440 462.

- Affidavit of Denise Pascarella, Corporate Vice President of
  New York Life Insurance Company (Dkt. no. 58).
  Authenticates a December 27, 2002 New York Life Beneficiary
  Authorization Form designating Defendant as the primary
  beneficiary for Decedent's contributory life coverage under
  the Group Plan for New York Life Agents, a copy of the DFYC
  Plan and its Beneficiary Designation Form naming Defendant
  as a beneficiary, a copy of the Accredited Investors Plan
  with a Beneficiary Designation Form naming Defendant as a
  Beneficiary, a copy of the District Agents Plan and a
  Designation form naming Defendant as a beneficiary, and the

AO 72A
(Rev. 8/82)

Agents Progress-Sharing Plain and its Beneficiary
Designation Form naming Defendant as a beneficiary.

- Affidavit of Michelle Albright, President and CEO of Smoot
Financial Group, and former personal assistant to Decedent.
(Dkt. no. 55). Affies that Decedent owned or controlled
each of the assets at issue in this case at the time of his
death.

Before an item of evidence may be admitted, Federal Rule of
Evidence 901(a) requires it to be authenticated with evidence
"sufficient to support a finding that the item is what the
proponent claims it is." Fed. R. Evid. 901(a). Proper
authentication requires only that the proponent of the evidence
make out a *prima facie* case that the proffered evidence is what
it purports to be. United States v. Belfast, 611 F.3d 783, 819
(11th Cir. 2010). Evidence may be authenticated by its
"appearance, contents, substance, internal patterns, or other
distinctive characteristics . . . taken together with all the
circumstances." Fed. R. Evid. 901(b)(4). Authentication may be
established "solely through the use of circumstantial evidence."
United States v. Smith, 918 F.2d 1501, 1510 (11th Cir. 1990).
Testimony by a witness with knowledge that an item is what it is
claimed to be may also authenticate a document. Fed. R. Evid.
901(b)(1).

One challenge Defendant makes to several of the affidavits listed above is that they go beyond simply authenticating documents and instead make substantive assertions about those documents such as, for example, that Decedent maintained control of those policies at the time of his death. Defendant argues that this testimony is inadmissible if the witnesses were not previously disclosed under Federal Rule of Civil Procedure 26. Other federal courts have held that where an affidavit of a previously undisclosed witness is exclusively used to authenticate documents already known to exist to a party, the fact that the witness was not previously disclosed is harmless and the affidavit may properly be considered by the court. Lam v. City & Cnty. of San Francisco, 565 F. App'x 641, 643 (9th Cir. 2014). At least one other court has distinguished testimony in an affidavit that authenticates a document from testimony that adds further substantive evidence, and admitted the former and excluded the latter where a witness was not properly disclosed pursuant to Rule 26(a)(1). In re Mahoney, 368 B.R. 579, 590-91 (W.D. Tex. 2007). Defendant suggests that the "result is the same in the case at bar." Dkt. no. 70, p. 5.

Here, it is uncontested that Defendant knew of the various documents creating the life insurance policies, annuities, IRAs, and other assets by which she received $5.4 million upon the death of her ex-husband. Thus, the affidavits of Navin,

O'Malley, Taylor, Pascarella, and Terry are admissible insofar as they merely authenticate the documents in question in this case. However, several of these affidavits go further than mere authentication, and state that Decedent owned and controlled the policies at the time of his death. See, e.g., Navin Aff. ¶¶ 4-10; O'Malley Aff. ¶ 4; Pascarella Aff. ¶¶ 4-8 Taylor Aff. ¶ 4; Terry Aff. ¶¶ 4-7. These five affiants were not disclosed pursuant to Rule 26(a)(1). Any substantive evidence they provide beyond mere authentication is inadmissible. Thus, the Court will admit these affidavits insofar as they authenticate the underlying policies and related documents, but the Court will not consider their testimonies that Decedent had incidents of ownership over the policies at the time of his death.

Unlike the other affiants, Ms. Albright was disclosed to Defendants, but not until parties filed the proposed pre-trial order. See Dkt. no. 40, p. 8. Defendants object to Ms. Albright being called as a witness because she was not disclosed prior to the close of discovery pursuant to Rule 26(a) and (e). Id. However, under Federal Rule of Civil Procedure 37(c)(1), a party may use a witness to supply evidence even though that witness was not previously identified pursuant to Rule 26(a) or (e) if the "failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

AO 72A
(Rev. 8/82)

> In exercising its broad discretion to determine
> whether a [Rule 26 violation] is substantially
> justified or harmless for purposes of a Rule 37(c)(1)
> exclusion analysis, a district court should be guided
> by the following factors: (1) the surprise to the
> party against whom the evidence would be offered; (2)
> the ability of that party to cure the surprise; (3)
> the extent to which allowing the evidence would
> disrupt the trial; (4) the importance of the evidence;
> and (5) the nondisclosing party's explanation for its
> failure to disclose the evidence.

Abdulla v. Klosinski, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012). Other districts have applied a similar set of factors to an undisclosed affiant to hold that the failure to disclose was harmless where the opposing party had notice that the affiant may have had information relevant to the case. Stolarczyk ex rel. Stolarczyk v. Senator Intern. Freight Forwarding, LLC, 376 F. Supp. 2d 834, 843 (N.D. Ill. 2005).

Here, Defendant had ample notice that Ms. Albright had exactly the information she produces in her affidavit. In fact, Defendant, through the same counsel representing her in the present case, solicited the exact same information Ms. Albright presents in her affidavit during a deposition in a prior case involving both parties and the same insurance policies in question here. See Dkt. no. 51-1 (Albright Dep. in N.Y. Life Ins. Co. v. Smoot, 2:09-cv-047 (S.D. Ga. Nov. 30, 2009)). In the present affidavit, Ms. Albright affies that she compiled a memo of all of Decedent's life insurance policies and their respective beneficiaries for Decedent two months before his

death. Albright Aff. ¶¶ 9-13. In the prior deposition, Defense counsel solicited the following information form Plaintiff:

> Q:   In December of 2008, what conversations did you have with [Decedent] about who his designated beneficiaries were for these various deferred compensation plans?

> A:   He wanted a summary of his beneficiaries on everything.

> Q:   Okay.

> A:   His life insurance, 401(k), all of it, so I had given him the summary and he made one change.

> . . .

> Q:   And he had a right to change his beneficiaries at any time?

> A:   Yes. That's my understanding, yes.

> Q:   And you have no evidence that he didn't read those reports that you put on his desk?

> A:   That's right. I do not.

> Q:   And he didn't change his beneficiaries on those plans from the way they're shown on those exhibits we just looked at before his death?

> A:   He did not.

Dkt. no. 51-1, 25:20-26:3; 42:4-13. Plaintiff solicited this very testimony in a prior proceeding. She will not be surprised at all to see it in the current proceedings regarding the same policies. Ms. Albright's affidavit, then, is admissible in its entirety because it is harmless under Rule 37(c)(1).[4]

---

[4] Defendant does not directly dispute the admissibility of the prior deposition testimony itself. Even so, the Court holds that it is admissible

AO 72A
(Rev. 8/82)

Thus, Plaintiff has properly authenticated all of the plans, policies, and other documents provided in Galis's affidavit (Dkt. no. 34) via the affidavits of Navin, O'Malley, Taylor, Pascarella, and Terry (Dkt. nos. 52, 54, 56-58). While these five affidavits are not admissible to show that Decedent had any incidents of ownership over the policies (insofar as such incidences cannot be gleaned from the face of the policies and other documents themselves), the affidavit of Ms. Albright, which was admitted in its entirety, may be put to that use. With this admissible evidence, the Court now turns to Defendant's specific objections to whether each document actually establishes Decedent's incidents of ownership.

### b. Incidents of Ownership

Proceeds from a life insurance policy are considered part of an estate for federal estate tax purposes as long as the decedent possessed incidents of ownership over the policy. I.R.C. § 2042 (including in the gross estate the value of all property received by beneficiaries to insurance policies on the decedent's life "with respect to which the decedent possessed at his death any of the incidents of ownership . . ."). "Incidents of ownership" generally refers to the right of the insured or

---

per Federal Rule of Civil Procedure 32(a)(8). Fed. R. Civ. P. 32(a)(8) ("A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.").

AO 72A
(Rev. 8/82)

his estate to the economic benefits of the policy. 26 C.F.R. § 20.2042-1(c)(2). This includes "the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." Id.

The most sweeping evidence in the record establishing that Decedent held incidents of ownership over all of the policies in question in this case is the affidavit of Decedent's former personal assistant, Ms. Albright. As Defendant established through examining Ms. Albright in 2009, Ms. Albright, at Decedent's request, prepared a memorandum for Decedent two months before he died so that he may consider who would remain a beneficiary of one of his many life insurance policies and other financial assets. Albright Aff. ¶ 9. While Decedent only elected to change the beneficiary of one policy, it was Ms. Albright's understanding that "he could have changed the beneficiaries designated for those various life insurance policies and other financial assets." Id. ¶ 11. To be clear, Ms. Albright affied that "[a]t the time of his death, Decedent owned and/or controlled the following assets without limitation," and then listed each of the policies for which Plaintiff seeks § 2206 contribution from Defendant. Id. ¶ 13.

The Court need not rely on Ms. Albright's testimony alone
to conclude that Decedent held incidents of ownership over each
of the insurance policies in question. Those policies themselves
reflect the incidents in various ways.

The New York Life Insurance Policies each indicate that
Decedent was either the Owner or, in the case of Policy 62 800
622, which was owned by Satilla Community Bank, that Decedent
had the power to (and did) use the policy to obtain a loan:

- 62 887 711: Dkt. no. 34, Ex. 6, p. 2 (listing Decedent as
  owner).

- 62 800 622: Id. Ex. 9, p. 2. (Collateral Assignment from
  Decedent to Satilla Community Bank).

- 45 774 220: Id. Ex. 11, p. 2 (listing Decedent as owner).

- 45 492 891: Id. Ex. 13, p. 2 (same).

- 43 918 184: Id. Ex. 15, p. 2 (same).

- 38 068 808: Id. Ex. 17, p. 2 (same).

- 48 440 462: Id. Ex. 19, p. 2 (same).

Each of these documents states, on an endorsement page at the
end of the policy, "This policy is issued in place of a
previously issued policy with the same policy number which was
lost, as shown in the evidence file with us." See, e.g., id. Ex.
6, p. 29. Defendant suggests that this somehow distinguishes
these documents from the policies that form the basis of

Plaintiff's claim. Dkt. no. 44, pp. 7-8. However, there is no evidence that these duly authenticated documents are not what they say they are: accurate reflections of the operative policies at the time of Decedent's death. Plaintiff has established Decedent's incidents of ownership for each of these documents.

The Cincinnati Life Insurance policies, authenticated by Terry, each include a copy of the application for the policy along with a "specimen" document detailing its terms. Defendant argues that because these "specimen" documents list "John Doe" as the owner and are marked with fictitious policy numbers, there is no way to tell if the specimen policies' terms match those of the original policies. However, "when a lost or destroyed insurance policy is involved, the terms of the policy can be shown by secondary evidence." Glew v. Cigna Grp. Ins., 590 F. Supp. 2d 395, 413 (E.D.N.Y. 2008) (citing Bituminous Cas. Corp. v. Vacuum Tanks, Inc., 975 F.2d 1130 (5th Cir.1992)). "This means that the secondary evidence requires evidence of the *policy terms*, not just of the existence of the policy." Id.; see also Fed. R. Evid. 1004 (allowing secondary evidence to establish the contents of a missing document in some circumstances). Here, while many of the "terms" of the Cincinnati Life Insurance policies are provided in the "specimen," Terry authenticated the specimens as having the

"same material terms" as the underlying policies. Terry Aff.
¶¶ 4-7. Furthermore, the specimens stand alongside other
authenticated documents pertaining to the policy, such as
insurance applications, policy service forms, and policy
summaries. These secondary writings, all authenticated and taken
together, are enough to supply the terms necessary to inspect
the policies for Decedent's incidents of ownership.

- L2519656: Dkt. no. 56, Ex. 1, p. 2 (Decedent as owner).

- L2561015: Id. Ex. 2, p. 5 (same).

- P2772550: Id. Ex. 3, p. 2 (same).

- P2785180: Id. Ex. 4, p. 2 (same).

The Unum Group Policy was not a policy that Decedent owned
himself. The group policy was one provided by his employer as a
benefit. While Decedent did not "own" the policy, he did exhibit
other incidents of ownership over the policy by designating its
beneficiaries.

- Unum Policy 573606: Dkt. no. 34, Ex. 27 (beneficiary
  designation documents).

Finally, there are a number of other life insurance
policies that Decedent owned at the time of his death, but which
were held on the life of his Defendant. The Form 712's
allocating the value of these plans to Decedent's estate are
authenticated in the Taylor Affidavit. Dkt. no. 54. While the

AO 72A
(Rev. 8/82)

value of the death benefits of these policies was not included in Decedent's estate (because no death benefit will be paid until Defendant passes away) the "ownership interests" of $7,085 were nevertheless included in the state tax return. Because these policies reverted to Defendant, this amount of ownership interest in these policies is attributable to her. Each of these policies is a New York Life Insurance Company policy.

- 47 912 509: Taylor Aff., Ex. 1, p. 2.

- 47 720 480: Id. p. 3.

- 46 545 622: Id. p. 4

- 46 307 006: Id. p. 5.

- 45 492 867: Id. p. 6.

- 45 774 213: Id. p. 7.

Finally, Defendant argues that even if these Documents show that Decedent had incidents of ownership over the policies at some point prior to his death, they do not prove that he held incidents of ownership *at the time* of his death. Defendant suggests that Ms. Albright's testimony that Decedent requested a summary of the beneficiaries to policies on his life two months before he died is two months too soon to establish that he had incidents of ownership when he actually passed. The Court is not persuaded by Defendant's argument. Ms. Albright testified that Decedent held incidents of ownership in the weeks preceding his

AO 72A
(Rev. 8/82)

death. Nothing in the record suggests that this fact changed in Decedent's final weeks.

### c. Plaintiff's Arithmetic

Defendant raises two challenges against Plaintiff's calculation of the taxable estate (the "denominator" in the formula that determines Defendant's liability). First, Defendant argues that Plaintiff incorrectly calculated the taxable estate to be roughly $7.7 million, when in fact Decedent's tax return demonstrates that there was $9.1 million of "Insurance on the Decedent's Life." See Dkt. no. 44-3, p. 4, item number 4. Plaintiff, in response, has provided an affidavit from the estate's accountant, James Grace. Dkt. no. 53. In his affidavit, Grace explains that "the proceeds of two life insurance policies were accounted for in the net residuary estate's negative value of $1,464,137, meaning that related expenses of the estate were greater than the insurance proceeds and other unencumbered assets of the estate." Id. ¶ 8. Thus, Grace applied the "estate tax exemption" to the estate's tax filing. Id. This had the effect of lowering the "taxable estate" from roughly $9.1 million to $7.7 million. It also had the effect of lowering Defendant's personal liability some $228,736. Id. ¶ 9. Thus, Plaintiff has not erred in his calculation of the taxable estate in this regard.

AO 72A
(Rev. 8/82)

Second, Defendant argues that because Decedent was required under the divorce decree to maintain a $1 million policy on his life for her benefit, that amount should have been deducted from the taxable estate as indebtedness pursuant to I.R.C. § 2053(a)(4). Defendant raised this issue in her initial reply brief, and Plaintiff countered that, as Executor of the estate, he had considerable discretion in how he resolved the tax debt on behalf of the estate. However, Plaintiff says that out of an abundance of caution, he nevertheless presented Defendant's § 2053(a)(4) argument to the IRS after briefing on the motion for summary judgment was complete. Dkt. no. 74, ¶ 6. The IRS agreed with Defendant's argument and approved an adjustment of the estate's tax return. Id. ¶ 7. The estate received a $476,986 tax refund. Dkt. no. 74-1, ¶ 10.

This refund, of course, changes the amount that Defendant will be liable for if Plaintiff prevails on all of his claims. Specifically, Defendant's share of the principal estate tax was reduced from $885,589 to $586,807, her share of the interest paid to the IRS was reduced from $101,538 to $67,281, and the prejudgment interest on these amounts (as of March 19, 2015, by Plaintiff's calculations) was reduced from $149,745 to $100,729. Dkt. no. 74, ¶ 8. Defendant agrees with Plaintiff that, assuming Plaintiff can prove liability, Plaintiff's damages claim should be reduced by $382,055. Dkt. no. 76, p. 2.

25

### d. Plaintiff's Claim for Interest and Penalties Paid to the IRS

Defendant argues that, to the extent she is liable for contribution under I.R.C. § 2206, she should still not be liable for the interest and fees paid to the IRS in addition to the principal debt. However, § 2206 allows an executor to collect from each beneficiary who received benefits on the decedents' life insurance policies "such portion of the total tax paid as the proceeds of such policies bear to the taxable estate." I.R.C. § 2206. The I.R.C. states that taxes paid on an estate and the interest imposed on such tax are one and the same:

> Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.

I.R.C. § 6601(e)(1). Plaintiff is liable for the interest and fees on her share of the taxes to the same extent she is liable for the tax itself. This amount, after taking into consideration the IRS's recent adjustment on the estate's tax liability, is $67,281. See Dkt. no. 74, p. 2; Dkt. no. 76, p. 2.

### e. Defendant's Res Judicata Defense

Finally, Defendant raises res judicata and collateral estoppel arguments against Plaintiff's claim for I.R.C. § 2206 contribution. As Defendant acknowledges, the Court has already

AO 72A
(Rev. 8/82)

rejected these arguments in its prior Order. See Dkt. no. 27, pp. 10-19.

## II. Count II: Contribution for Taxes Attributable to All Other Estate Assets Defendant Received

Count II of Plaintiff's Complaint seeks recovery of $353,879, the portion of the tax attributable to all non-life insurance Assets Defendant received (i.e., the deferred compensation / deferred commission plan accounts, the IRA account, the 401(k) account, and the annuity, which are not covered by I.R.C. § 2206). Defendant argues, first, that there is no right of contribution under Georgia law and, second, that even if there is such a right, the fact that Defendant and Decedent were divorced renders the terms of the will inapplicable to her. The Court need not discuss Defendant's first challenge because she prevails on the second.

In Georgia, "[a]ll provisions of a will made prior to a testator's final divorce or the annulment of the testator's marriage in which no provision is made in contemplation of such event shall take effect as if the former spouse had predeceased the testator . . ." Ga. Code Ann. § 53-4-49. Defendant argues that because the will was written while she and Decedent were still married, Item X, which requires contribution for the tax debt paid on the proceeds she received from the estate, does not apply to her and she therefore does not have to contribute to

27

the portions of the tax debt not already accounted for under
I.R.C. § 2206. Plaintiff has responded to this argument with
secondary authority that shows, he claims, that the General
Assembly did not intend section 53-4-49 to operate as Defendant
argues it should.[5] Defendant counters, that the Eleventh Circuit
has instructed: "[w]here the language of a statute is plain, we
will not look at legislative history, even if that legislative
history evinces a contrary intent." In re Yates Dev., Inc., 256
F.3d 1285, 1289 (11th Cir 2001); see also CBS Inv. v.
PrimeTimePerfe 24 Joint Venture, 245 F.3d 1217, 1222 ("[W]hen
the words of a statute are unambiguous, then, this first canon
[of statutory construction] is also the last: judicial inquiry
is complete."). Thus, Defendant would have this Court interpret
the words "all provisions of a will" to mean exactly that: all
provisions of Decedent's will, including Item X, must be
interpreted as if Defendant had predeceased Decedent, and thus
do not apply to her.

Because there is no ambiguity in Georgia Code section 53-4-
49, this Court's inquiry into its meaning begins and ends with
its terms: "All provisions" of Decedent's will made prior to his
final divorce with Defendant "in which no provision is made in
contemplation of such event shall take effect as if the"

---

[5] Plaintiff's authority is a law review article in which the "Reporter and
primary drafter of Georgia's New Probate Code" discusses various provisions
of the probate code. Mary F. Radford & F. Skip Sugarman, Georgia's New
Probate Code, 13 Ga. St. U. L. Rev. 605, 605 n.d, (1997).

Defendant had predeceased Decedent. See Ga. Code Ann. § 53-4-49. Because Item X of Decedent's will makes no provision in contemplation of his divorce with Decedent, Item X must be included in that category of provisions which shall only take effect as if Defendant has predeceased Decedent. And in this case, that means that Item X's provision that "[a]ll transfer, estate, inheritance, succession and other death taxes which shall become payable by reason of my death . . . shall be charged against and be paid by the recipient of such property or from the property to be received" does not apply to Defendant. See Will, Item X.

The Internal Revenue Code and Georgia's probate laws both contemplate extremely intricate networks of estate tax schemes. Unsurprisingly, the state and federal tax schemes may not dovetail perfectly in all circumstances. And here, Plaintiff appears to be caught in a gap between the two systems: while the Internal Revenue Code requires him, as Executor of the estate, to pay taxes on the value Defendant received from Decedent's non-life insurance policies without any provision for contribution, the one provision that would fill that gap—Item X— is excluded by operation of Georgia's probate law. Undoubtedly, this is perhaps an unintended outcome of Georgia's probate code. But because the language of the statute is unambiguous, the

outcome is inescapable in this case. Thus, Count II of Plaintiff's motion for summary judgment must be **DENIED**.

### III. Pre-Judgment Interest on State and Federal Law Claims

In addition to contribution for the taxes paid on the assets Defendant received under Decedent's will, the Plaintiff also seeks prejudgment interest from Defendant. In Georgia, "[a]ll liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them . . ." Ga. Code Ann. § 7-4-15.

> A claim is unliquidated when there is a bona fide contention as to the amount owing. A liquidated claim is an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof." The word "liquidated" as used in OCGA § 7-4-15 means "settled, acknowledged, or agreed."

In re Estate of Miraglia, 658 S.E.2d 777, 780 (Ga. Ct. App. 2008) (quoting Holloway v. State Farm Fire & Cas. Co., 537 S.E.2d 121, 124 (Ga. Ct. App. 2000)). "If a claim is liquidated under OCGA § 7-4-15, the award of prejudgment interest is mandatory, should be awarded by the trial court as a matter of law, and accrues at the rate of seven percent per annum simple interest if the rate is not established in the parties' written contract." Gwinnett Cnty. v. Old Peachtree Partners, LLC, 545, 764 S.E.2d 193, 198 (Ga. Ct. App. 2014) (citing Ga. Code Ann. § 7-4-2)).

As noted in _Miraglia_, "The word 'liquidated' as used in OCGA § 7-4-15 means 'settled, acknowledged, or agreed.'" The damages Plaintiff seeks in this case were not settled, acknowledged, or agreed when Plaintiff made his initial demand for Contribution on January 9, 2013. Throughout this litigation, Defendant has argued that Plaintiff's tax position incorrectly included $1 million of Defendant's proceeds in the taxable estate, and thus unnecessarily increased both the amount of taxes the estate paid to the IRS and the amount of contribution Plaintiff sought from Defendant. Because Defendant ultimately prevailed on this argument, her contention can be viewed as nothing less than _bona fide_. Because there was a bona fide contention as to the amount Defendant owed under Count I and that amount was not "settled, acknowledged, or agreed" upon when Plaintiff made his first demand on January 9, 2013, Plaintiff's damages under Count I were not liquidated. Thus, Plaintiff is not entitled to prejudgment interest on Count I, and his motion for summary judgment on that Count must be **DENIED**.[6]

## IV. Count III: Attorney's Fees and Costs

Finally, Plaintiff alleges that he is entitled to attorney's fees and costs pursuant to Georgia Code section 13-6-11 "because by refusing to reimburse Executor for the portion of

---

[6] Plaintiff also sought prejudgment interest for his claims under Count II, but the Court has denied summary judgment on that Count in its entirety. See Part II _supra_.

the estate taxes attributable to the Proceeds she received, Dianne has acted in bad faith, been stubbornly litigious, and has caused the Executor unnecessary trouble and expense." Compl. ¶ 43.

While the costs of litigation are generally not allowed under Georgia law, Georgia Code section 13-6-11 allows "a jury to allow" attorney's fees and costs "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense . . ." Ga. Code Ann. § 13-6-11.

As to federal law, I.R.C. § 2206 does not specifically address the issue of attorney's fees. The Supreme Court has expressed a preference for the "American Rule," which prohibits the imposition of the prevailing party's attorney's fees on an opponent except when authorized by statute or under certain traditionally recognized exceptions. Woods v. Barnett Bank of Ft. Lauderdale, 765 F.2d 1004, 1014 (11th Cir. 1985) (citing Alyeska Pipeline Serv. Co. V. Wildlife Society, 421 U.S. 240 (1975)). "Deviation from the 'American Rule' may be appropriate if an unfounded action or defense is brought or maintained for oppressive reasons, or if an opponent has acted in bad faith, vexatiously, or wantonly. . . . The bad faith or vexatious

AO 72A
(Rev. 8/82)

conduct must be part of the litigation process itself." Id. (citations omitted).

Here, Defendant's defense was not vexatious, conducted in bad faith, or even overly litigious considering the stakes. In fact, Defendant's perseverance on the argument that $1 million of her insurance proceeds were improperly included in the taxable estate proved to be correct and saved the entire estate $476,986. Thus, while Defendant has not prevailed on all of her claims, her ardent defense cannot be considered "vexatious" or done in "bad faith" where it is based on legitimate contentions. Summary judgment is **DENIED** on Plaintiff's claims for attorney's fees.

### DIRECTION TO THE PARTIES

Having determined that there is no genuine dispute of material fact as to Defendant's challenges to Plaintiff's request for contribution under I.R.C. § 2206, all that is left to do is calculate the amount of Defendant's liability.

Plaintiff has provided a calculation of Defendant's liability in its latest brief. See Dkt. no. 77. This calculation arrives at a total liability of $654,088 before interest is considered. Id. Apparently, though, this calculation also includes those sums Plaintiff would be entitled to had he prevailed on Count II, his claim for contribution on the non-

life insurance assets under Georgia law, which this Court rejected.

Thus, because the variables pertinent to Defendant's liability have changed over the course of summary judgment briefing and the parties have proffered multiple (and unreconciled) calculations that could not contemplate the conclusions outlined here, the Court directs the parties to file their own final calculations in light of this Order. Specifically, the parties are directed to submit, with supporting pin-cites (document, page, and, if applicable, line or paragraph number) to the record, one document referencing every variable in a calculation of Defendant's liability under Count I (contribution under I.R.C. § 2206), including amounts for fees and interest paid to the IRS but excluding prejudgment interest.

Plaintiff is directed to file its final calculation within 10 days. Defendant will have 10 days to respond. Defendant may, in its response, challenge Plaintiff's calculation or specific variables thereof for which it argues a material issue of fact remains, even after accounting for this Order's holdings.

**CONCLUSION**

Plaintiff's Motion for Summary Judgment is **GRANTED** as to Count I for contribution under I.R.C. § 2206. Plaintiff's Motion is **DENIED** as to Count II for contribution under Georgia law,

AO 72A
(Rev. 8/82)

Count III for attorney's fees, and Plaintiff's request for prejudgment interest on Counts I and II. The Court will enter a final judgment upon consideration of the final briefs.

**SO ORDERED**, this 31ST day of March, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)